IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Donald Margolis**<br>116 Westchester Drive<br>Amherst, Ohio 44001<br><br>            Plaintiff,<br><br>    v.<br><br>**City of Amherst, Ohio**<br>c/o Anthony Pecora, Director of Law<br>Amherst City Hall<br>206 South Main Street<br>Amherst, Ohio, 44001<br><br>**Brian Griffin** (in his official and personal capacities)<br>9601 Thorpe Road,<br>Berlin Heights, OH 44814<br><br>**Devin Small** (in his official and personal capacities)<br>416 Kestral Way<br>Amherst, OH 44001<br><br>**Mark Cawthon** (in his official and personal capacities)<br>1212 Meadowbrook Court<br>Amherst, OH 44001<br><br>**John Does 1–5** (in their official and personal capacities)<br>c/o City of Amherst<br>Amherst City Hall<br>206 South Main Street<br>Amherst, Ohio, 44001<br><br>            Defendants. | Case No. _____<br><br><br>Judge _____<br><br>Magistrate Judge _____ |

| |
|---|
| **COMPLAINT WITH JURY DEMAND** |

**NATURE OF ACTION**

1.      This is a civil-rights action for violations of the United States Constitution under 42 U.S.C.

§ 1983 (including violations of the Fourth, Sixth, and Fourteenth Amendments to the Constitution),

with pendent claims for violations of Ohio law. Ohio state-law claims include false arrest, malicious

prosecution, intentional infliction of emotional distress, and statutory civil liability for criminal acts

that included interference with civil and statutory rights, intimidation, and tampering with records.

2.      Plaintiff Donald Margolis is a resident of Amherst, Ohio, who was the victim of a false arrest

and malicious prosecution by Defendants for an alleged crime they not only knew from the

purported victim's own account that Mr. Margolis did not commit—but that was non-existent

because the Supreme Court of Ohio eight years earlier had invalidated the statute—Ohio Rev. Code

§ 2905.05—as unconstitutional.

**PARTIES**

3.      Mr. Margolis lives in Amherst, Ohio.

4.      Defendant City of Amherst, in Lorain County, Ohio is an Ohio political subdivision as

defined in Ohio Revised Code § 2744.01, of which the City of Amherst Police Department is a part.

Amherst, through its police department, employs Defendant Brian Griffin. Amherst is liable for acts

and omissions taken under its customs, policies, or practices. Amherst is also responsible for training

and supervising its employees in carrying out their duties in a lawful manner.

5.      Defendant Brian Griffin lives in Berlin Heights, Ohio. He was an Amherst police sergeant

during all relevant times. He was acting under color of state law. He is sued in both his official and

personal capacities.

6.      Defendant Devin Small lives in Amherst, Ohio. He was an Amherst police sergeant during

all relevant times. He was acting under color of state law. He is sued in both his official and personal

capacities.

7.      Defendant Mark Cawthon lives in Amherst, Ohio. He was the Chief of the Amherst Police Department during all relevant times. He was acting under color of state law. He is sued in both his official and personal capacities.

8.      Defendants John Does 1–5 live in or near enough to commute to Amherst, Ohio in Lorain County. They were Amherst police officers during all relevant times. They were acting under color of state law. They are sued in both their official and personal capacities.

**JURISDICTION AND VENUE**

9.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201, for federal claims under 42 U.S.C. 2000e *et seq.* and 42 U.S.C. §§ 1983 and 1988, which provide for attorney and expert fees. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

10.      This Court has personal jurisdiction over Defendants, who reside in and conduct business in this District.

11.      Venue is proper under 28 U.S.C. § 1391, because the events giving rise to the claims took place within this District.

**FACTS**

**Mr. Margolis was in his MG sports car when preteen boys expressed interest in it.**

12.      Mr. Margolis was 77 years old at the time of the incidents related to this complaint. He has lived in Amherst for over 50 years. He is married, a retired small businessperson, a United States Air Force veteran, and a law-abiding citizen with no criminal record.

13.      On August 24, 2022, Mr. Margolis was leaving the Dairy Mart at 167 Cleveland Avenue in Amherst when two 12-year-old boys approached him in the parking lot. The boys were intrigued by Mr. Margolis's car, a vintage 1970s MG sportscar, and asked him for a ride to the library.

14.     Mr. Margolis declined to give them a ride. One of the boys then asked Mr. Margolis if he could sit in the sportscar, which Mr. Margolis permitted. The boy sat in the sportscar for about 30 seconds, apparently enjoying the experience, while Mr. Margolis talked to him about the car. The boy then got out of the sportscar and walked away.

15.     This ended the interaction between Mr. Margolis and the boys.

**Mr. Margolis's nightmare at the hands of Amherst police begins—even though they knew from the purported victim that Mr. Margolis had done nothing wrong.**

16.     This interaction was reported by a third party to the Amherst police, who investigated the matter.

17.     Defendant Griffin took a leading role in the investigation, responding to the scene of the incident, interviewing witnesses, authoring an investigative report, and signing a sworn criminal complaint against Mr. Margolis.

18.     That same evening as the interaction in the Dairy Mart parking lot, August 24, 2022, from about 9:49 to 10:18 pm, a uniformed Amherst police officer interviewed the boy who sat in the sportscar and his mother. This interview was video recorded, and the boy also provided the officer with a written statement recounting his entirely innocent interaction with Mr. Margolis. The boy confirmed to police that he had sat in Mr. Margolis's stationary car for about 30 seconds, but when asked directly denied that Mr. Margolis "said anything nasty" to him or that anything sexual occurred.

19.     The next day, August 25, at about noon, Defendant Griffin called Mr. Margolis and asked him to come to the station to discuss the previous day's events.

20.     Once Mr. Margolis arrived at the station, Defendant Griffin started to Mirandize him.

21.     Mr. Margolis stated he wanted an attorney, and Defendant Griffin told him to go to the Oberlin Municipal Court to resolve the matter. As Mr. Margolis tried to leave for Oberlin, two

uniformed Amherst police officers detained him and brought him to the courthouse in a police car. The officers took Mr. Margolis's belongings, including his wallet containing over $1,300 in cash.

22.     Mr. Margolis then spent several hours in Oberlin Municipal Court before he was arraigned without counsel and ordered to wear a GPS unit. He was then taken to Lorain County jail. Because it was after 5:00 PM, Mr. Margolis could not be issued a GPS unit that day and was jailed overnight.

23.     The next day, August 26, Mr. Margolis was issued a GPS unit and then remained on house arrest until October 17, 2022. During this time, Mr. Margolis was charged with purported "child enticement"—a first-degree misdemeanor—ostensibly under Ohio Rev. Code § 2905.05.

24.     Following his arrest, in about late August 2022, Mr. Margolis spoke with the City of Amherst law director, a neighbor, believing that it was the law director's obligation to act as an advocate for the people. The law director told Mr. Margolis—who was unrepresented at the time—that Amherst and its officials were immune from all liability.

25.     That was not accurate.

26.     The law director, speaking for Amherst apparently with civil liability on his mind while Mr. Margolis was being prosecuted, did not disclose to Mr. Margolis that he represents Defendant City of Amherst, an adverse party to Mr. Margolis's interests.

27.     Mr. Margolis was forced to retain defense counsel to prepare for a criminal trial.

**Amherst arrested and had Margolis prosecuted for a non-existent crime that the Supreme Court of Ohio *had declared unconstitutional eight years earlier*—destroying his reputation.**

28.     On August 25, 2022, Defendant City of Amherst filed a criminal complaint against Mr. Margolis in Oberlin Municipal Court related to the previous day's events. The complaint charged Mr. Margolis with a violation of § 2905.05.

29.     Defendant Griffin swore to and subscribed the complaint.

30.     On October 14, 2022—three calendar days and one business day before his scheduled criminal trial—Mr. Margolis's counsel moved to dismiss his criminal case because the Supreme Court of Ohio had invalidated § 2905.05 as unconstitutional in *State v. Romage*, 138 Ohio St.3d 390, 396, 7 N.E.3d 1156 (2014).

31.     The same day, October 14, the court held a hearing on Mr. Margolis's motion to dismiss before reviewing *Romage*, concluding the law was in fact unconstitutional, and cancelling Mr. Margolis's bond conditions and criminal trial.

32.     Mr. Margolis was finally released from house arrest.

33.     On October 19, the court dismissed the charges against Mr. Margolis, noting that because § 2905.05 had been ruled unconstitutional, it is not a law and therefore there is no charge. The court also issued an order terminating the criminal temporary protective order against Mr. Margolis.

34.     On October 21, the court ordered that Mr. Margolis's criminal record be sealed.

**Arresting and prosecuting someone for a non-existent, unconstitutional purported criminal offense violated clearly established law. Defendant City of Amherst failed to adequately train its officers and empowered those officers to undertake unconstitutional acts on the City's behalf.**

35.     Again, at the time of Mr. Margolis's arrest, § 2905.05 had been held unconstitutional for over eight years. *See id.*

36.     Because the Supreme Court of Ohio had invalidated § 2905.05 on constitutional grounds, the statute could provide no support for probable cause to arrest Mr. Margolis; and, in the absence of any probable cause, such an arrest violated Mr. Margolis's Fourth Amendment rights. *See generally Leonard v. Robinson*, 477 F.3d 347, 355, 358 (6th Cir. 2007).

37.     Regardless, the August 24, 2022 videorecorded Amherst police interview of the boy who interacted with Mr. Margolis showed the boy clearly and unambiguously disclaiming police suspicions that Mr. Margolis had asked him any prurient questions—or that anything sexual had occurred.

38.     This direct statement by the police's purported "victim" of the interaction—*obtained before Defendants arrested and prosecuted Mr. Margolis*—destroyed any alternative bases of probable cause Amherst police may have conceivably had to arrest Mr. Margolis. Still, Amherst police arrested and detained him the next day.

39.     Defendant City of Amherst failed to provide adequate training to its officers on clearly established Fourth Amendment and other constitutional rights, including the need to not arrest or prosecute anyone for a law that a controlling court like the Supreme Court of Ohio has declared unconstitutional, respect for and comprehension of the rule of law, the importance of not prosecuting someone when there is no probable cause that an offense was committed (and to take that standard seriously when a purported victim says nothing improper happened), and the need to maintain evidence.

40.     Chief of Police Mark Cawthon, a final decisionmaker, authorized and implemented the policy decision to arrest, charge, and prosecute Plaintiff, and delegated decisionmaking to Defendant Griffin and others, thus empowering them to act unconstitutionally on the City's behalf.

**Defendants anticipated litigation yet destroyed or hid relevant documentation.**

41.     In the days just after Mr. Margolis's arrest, Defendant City of Amherst's law director told him, incorrectly, that the City and its officers were immune from litigation. Even at the outset of Mr. Margolis's criminal case, the City was concerned about the potential for civil litigation stemming from Mr. Margolis's arrest.

42.     After the court dismissed and sealed the charges against Mr. Margolis, Defendant City of Amherst's mayor—also anticipating litigation—discussed with Margolis the possibility of civilly settling the matter. This conversation never materialized, leaving Mr. Margolis no choice but to file this litigation to vindicate his rights.

43.     On August 7, 2023, Mr. Margolis submitted through counsel a public-records request to the Amherst Police Department seeking all documents regarding Mr. Margolis, the Dairy Mart incident, the arrest, and prosecution.

44.     On August 17, 2023, Mr. Margolis's counsel received a response signed by both Defendant City of Amherst's law director and its assistant law director—the latter of whom had also served as the prosecutor in Mr. Margolis's criminal case. The response claimed that no responsive police reports, notes, communications, or recordings of witness interviews *exist*.

**Defendants destroyed Mr. Margolis's life and reputation.**

45.     Unsurprisingly, this incident has severely impacted Mr. Margolis. Aside from the intrinsic violation of his constitutional rights and liberty interests, Mr. Margolis—a longtime small businessman, United States Air Force veteran, law-abiding citizen, and resident of Amherst for over 50 years—also saw his reputation dragged through the mud in open court, in the media, and on social media. He had to bear the expense of hiring criminal-defense attorneys to prepare for a jury trial. He had to pay for a humiliating GPS monitor. Thanks to Amherst police officers forcing his unwarranted overnight detention in the Lorain County jail, he contracted COVID-19. He then suffered a stroke and continues to suffer lasting effects on his health due to his bout with COVID-19. And when Mr. Margolis's wallet was returned to him, his cash had been replaced by a debit card valued at only $900. So-called "law enforcement" apparently stole about $400.

46.     Mr. Margolis continues to feel these legal, reputational, emotional, physical, and financial impacts to this day. He has been sleepless with distress.

## CLAIMS

### CLAIM 1
### FOURTH AMENDMENT VIOLATION, 42 U.S.C. § 1983—WRONGFUL ARREST
### (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

47.     Plaintiff incorporates all previous allegations.

48. A state statute found unconstitutional by a state appellate court does not support probable cause.[1]

49. "It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment."[2]

50. Mr. Margolis had a Fourth and Fourteenth Amendment right to be free from wrongful arrest.

51. Mr. Margolis was shopping at Dairy Mart when two boys approached him to ask about his MG sportscar. As he recounted to Amherst police later that evening, one of the boys sat in the sportscar for about 30 seconds, during which the sportscar never moved. The boy also *told* police nothing sexual occurred during this incident. No officer could have reasonably believed there was probable cause to arrest Mr. Margolis for letting a boy enjoy sitting in his sportscar for 30 seconds. Nor where the crime for which the officer was arresting Mr. Margolis was non-existent because the Supreme Court of Ohio had invalidated it as unconstitutional.

52. As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

53. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 2
### FALSE ARREST UNDER OHIO LAW
#### (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

54. Plaintiff incorporates all previous allegations.

55. Defendants arrested Mr. Margolis without probable cause.

---

[1] *Leonard*, 447 F.3d at 358.

[2] *Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 592–93 (6th Cir. 1999)) (no qualified immunity where police officers unconstitutionally arrested § 1983 plaintiff).

56.     No officer could have reasonably believed there was probable cause to arrest Mr. Margolis for letting a boy enjoy sitting in his MG sportscar for 30 seconds, where the boy himself said nothing improper happened—and where the crime for which the officer was arresting Mr. Margolis was non-existent because the Supreme Court of Ohio had invalidated it as unconstitutional.

57.     As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

58.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 3
### FOURTH AMENDMENT VIOLATION, 42 U.S.C. § 1983—MALICIOUS PROSECUTION (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

59.     Plaintiff incorporates all previous allegations.

60.     "[T]he constitutional tort of malicious prosecution . . . is actionable in our circuit as a Fourth Amendment violation under § 1983."[3]

61.     Mr. Margolis was criminally prosecuted for a non-existent crime.

62.     And there was no probable cause for the arrest and criminal prosecution of Mr. Margolis.

63.     Defendants made, influenced, or participated in the decision to prosecute Mr. Margolis, including by falsifying evidence, drafting and submitting misleading investigative reports and a complaint, omitting key and material facts, and generally encouraging and enabling the prosecutor to prosecute. They acted with malice in instituting and continuing the prosecution.

64.     Mr. Margolis suffered a deprivation of his liberty and irreparable harm.

65.     The prosecution was resolved in Mr. Margolis's favor when the municipal court dismissed the case.

---

[3] *King v. Harwood*, 852 F.3d 568, 584 (6th Cir. 2017).

66.     When this motion was granted, Amherst's prosecutor, seeking to maintain Defendants'
determination to ruin Mr. Margolis, unsuccessfully, on Defendants' behalf and with their
encouragement, opposed the motion—despite the statute's clear unconstitutionality as held by the
Supreme Court of Ohio in *Romage*.

67.     Defendants' conduct violated the Fourth and Fourteenth Amendments via 42 U.S.C. § 1983.

68.     As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and
continues to suffer economic and non-economic damages for which Defendants are liable.

69.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to
punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 4
### MALICIOUS PROSECUTION UNDER OHIO LAW
### (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

70.     Plaintiff incorporates all previous allegations.

71.     Mr. Margolis was criminally prosecuted for a non-existent crime, for which there was no
probable cause even if it had existed.

72.     Defendants made, influenced, or participated in the decision to prosecute Mr. Margolis,
including by falsifying evidence, drafting and submitting misleading investigative reports and a
complaint, omitting key and material facts, and generally encouraging and enabling the prosecutor to
prosecute. They acted with malice in instituting and continuing the prosecution.

73.     Mr. Margolis suffered a deprivation of his liberty and irreparable harm.

74.     The prosecution was resolved in his favor when the municipal court dismissed the case
against Mr. Margolis.

75.     As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and
continues to suffer economic and non-economic damages for which Defendants are liable.

76.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 5
### FOURTH AMENDMENT VIOLATION, 42 U.S.C. § 1983—UNLAWFUL SEARCH (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

77.     Plaintiff incorporates all previous allegations.

78.     Mr. Margolis had a reasonable expectation of privacy in his person. Defendants' search of his pockets constituted searches within the meaning of the Fourth Amendment, as applied to the states by the Fourteenth Amendment.

79.     Defendants' actions were unreasonable in light of the surrounding circumstances.

80.     No probable cause existed to search Mr. Margolis's person.

81.     Mr. Margolis suffered humiliation and personal damage from Defendants' unlawful search.

82.     Defendants' actions violate the Fourth and Fourteenth Amendments via 42 U.S.C. § 1983.

83.     As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

84.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 6
### FOURTH AMENDMENT VIOLATION, 42 U.S.C. § 1983—WRONGFUL DETENTION (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

85.     Plaintiff incorporates all previous allegations.

86.     Defendants deprived Mr. Margolis of his Fourth Amendment right to be free from unreasonable seizure by detaining him without probable cause.[4]

---

[4] *Manuel v. Joliet*, 137 S. Ct. 911 (2017).

87.     Mr. Margolis was unlawfully detained in the Lorain County jail, contracted COVID-19 there, and then placed on house arrest from August 26 to October 17, 2022, losing his liberty and enduring humiliation.

88.     As a direct and proximate result of this unlawful detention, which the City endorsed and adopted as its own unwritten municipal policy, Mr. Margolis has suffered and will continue to suffer damages for which Defendants are liable, including, but not limited to, loss of liberty and freedom, loss of enjoyment of life, loss of reputation, physical detention against his will, physical injury, pain and suffering, mental anguish, emotional distress, embarrassment, humiliation, and legal fees and expenses in connection with his criminal defense.

89.     Defendants' actions violate the Fourth and Fourteenth Amendments via 42 U.S.C. § 1983.

90.     As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

91.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 7
### SIXTH AMENDMENT VIOLATION, 42 U.S.C. § 1983—DENIAL OF RIGHT TO COUNSEL (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

92.     Plaintiff incorporates all previous allegations.

93.     Criminal defendants have a right to counsel during an arraignment.[5]

94.     After Defendant Griffin started to Mirandize him, Mr. Margolis stated that he wanted an attorney. Defendant Griffin responded that Mr. Margolis should go to Oberlin Municipal Court to sort the matter out. As Mr. Margolis tried to depart for Oberlin, he was arrested, had his personal belongings included his cellphone confiscated, and taken to the court in police custody.

---

[5] *See*, *e.g.*, Ohio Crim. R. 10(C)(2).

95.     Mr. Margolis sat for hours in Oberlin Municipal Court before being arraigned in open court without representation.

96.     At no time following Mr. Margolis's statement that he wanted an attorney did Defendants ensure he had an attorney or the means to contact one.

97.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

98.     Defendants' actions violate the Sixth Amendment via 42 U.S.C. § 1983.

99.     As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

100.    Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 8
### MONELL LIABILITY, 42 U.S.C. § 1983—UNCONSTITUTIONAL POLICY
### (AGAINST THE CITY OF AMHERST)

101.    Plaintiff incorporates all previous allegations.

102.    Chief of Police Mark Cawthon, a final decisionmaker, authorized and implemented the policy decision to arrest, charge, and prosecute Plaintiff, and delegated decisionmaking to Defendant Griffin and individual Defendants. Cawthorn empowered the individual Defendants to act unconstitutionally on the City's behalf.

103.    Defendants Griffin, Small, and John Does 1–5 were authorized to make official policy for the City on these issues.

104.    The City's authorized actions, policies, and practices that violate 42 U.S.C. § 1983 and the Fourth, Sixth, and Fourteenth Amendments.

105.    As a direct and proximate result of the City's unlawful policy, Plaintiff has suffered and continues to suffer economic and non-economic damages for which the City is liable.

106.     The City's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter the City and others from engaging in this type of unlawful conduct.

### CLAIM 9
### *MONELL* LIABILITY, 42 U.S.C. § 1983—FAILURE TO TRAIN
### (AGAINST THE CITY OF AMHERST)

107.     Plaintiff incorporates all previous allegations.

108.     "[A] city can be liable under § 1983 for inadequate training of its employees."[6]

109.     The City failed to provide adequate training to its officers on clearly established Fourth Amendment, Sixth Amendment, and other constitutional rights, including the need to not arrest or prosecute anyone for a law declared unconstitutional, the need to not prosecute someone when there is no probable cause that an offense was committed (and to take that standard seriously), and the need to maintain evidence.

110.     The City's failure to train its officers displays deliberate indifference to the rights of persons they may encounter.

111.     The City has failed to train its police officers on these basic constitutional issues.

112.     The City is liable under the Fourth, Sixth, and Fourteenth Amendments via 42 U.S.C. § 1983.

113.     Defendants' failures with individuals' Fourth and Sixth Amendment rights amounts to deliberate indifference to the constitutional violations committed by Defendants against Mr. Margolis.

114.     The City knew, or should have known, that its officers mishandle situations and commit constitutional violations routinely.

115.     Still, Defendants failed to train the individual Defendants not to act unconstitutionally.

---

[6] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1969).

116.    Defendant's deliberate indifference to Defendant Officers' deprivation of constitutional rights may be considered a policy, practice, or custom of Defendant City of Amherst.

117.    As a direct and proximate result of Defendant's failure to train and supervise, which the City endorsed and adopted as its own unwritten municipal policy, Mr. Margolis has suffered and will continue to suffer economic and non-economic damages for which Defendant is liable.

118.    Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

**CLAIM 10**
**42 U.S.C. § 1983—SUPERVISORY LIABILITY**
**(AGAINST DEFENDANTS DEVEN SMALL AND MARK CAWTHON)**

119.    Plaintiff incorporates all previous allegations.

120.    To establish supervisory liability, "a platiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."[7]

121.    Defendant Small played an active role in Defendants' unconstitutional actions, including Defendant Griffin's Fourth Amendment violation. He encouraged and condoned other individual Defendants' actions, including their drafting and filing of false reports and a complaint, wrongful arrest of Mr. Margolis, and setting in motion and reinforcing Mr. Margolis's wrongful prosecution. He signed off on the charges against Mr. Margolis, despite the lack of probable cause and the fact the purported crime itself was unconstitutional.

122.    The culture of approval and acquiescence to unconstitutional officer conduct at the Amherst Police Department goes all the way to the top. Even after the criminal case against Mr. Margolis was dismissed in Oberlin Municipal Court, Defendant Chief Cawthom defiantly and unrepentantly told the *Chronicle Telegram* that "in his view the law remained on the books and he believes there was

_____

[7] *Hays v. Jefferson County*, 868 F.2d 869, 874 (6th Cir. 1982).

probable cause to charge Margolis."[8] This demonstrated deliberate indifference to our system of justice and the rule of law itself.

123.    Chief Cawthon and his officers believe themselves to be above the rule of law and separation of powers established in the United States and Ohio constitutions.

124.    As a direct and proximate result of Cawthorn and Small's failure to supervise, which the City endorsed and adopted as its own unwritten municipal policy, Mr. Margolis has suffered and will continue to suffer economic and non-economic damages for which Defendant is liable.

125.    Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 11
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.45—INTERFERENCE WITH CIVIL RIGHTS
### (AGAINST ALL INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES)

126.    Plaintiff incorporates all previous allegations.

127.    Under Ohio Rev. Code § 2921.45(A), "[n]o public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right."

128.    Under Ohio Rev. Code § 2901.22(B), "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high

---

[8] Jason Hawk, *Child Enticement Case Against Amherst Man Dropped on Constitutional Grounds*, CHRON. TELEGRAM (Nov. 10, 2022), https://chroniclet.com/news/332180/child-enticement-case-against-amherst-man-dropped-on-constitutional-grounds.

probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

129.     Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code §§ 2921.45(A) are criminal acts under § 2921.45(B).

130.     The individual Defendants, Amherst police officers, are public servants. As detailed above, they acted under color of office, employment, and authority to knowingly deprive Mr. Margolis of his civil rights, including his constitutional rights under the Fourth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

131.     As a direct and proximate result of Defendant's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant ais liable.

132.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 12
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.44(E)—DERELICTION OF DUTY
### (AGAINST ALL INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES)

133.     Plaintiff incorporates all previous allegations.

134.     Under Ohio Rev. Code § 2921.44(E), "[n]o public servant shall recklessly fail to perform a duty expressly imposed by law with respect to the public servant's office, or recklessly do any act expressly forbidden by law with respect to the public servant's office."

135.     The individual Defendants recklessly failed to perform duties expressly imposed on him by law, including providing full and complete information in their reports, charge, and affidavits; adequately establishing legal grounds for questioning, arresting, searching, and detaining Mr. Margolis; providing full and accurate information to prosecutors and judicial officers; training and

supervising others properly; and abstaining from violating Fourth and Sixth Amendment constitutional rights.

136.    As a direct and proximate result of Defendant's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant ais liable.

137.    Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

**CLAIM 13**
**ATTEMPTING TO INFLUENCE A PUBLIC SERVANT WITH FALSE WRITINGS UNDER OHIO REV. CODE § 2921.03(A) AND (C), CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE § 2307.60(A)(1) AND 2921.03(A), AND COMPLICITY UNDER § 2923.03 (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)**

138.    Plaintiff incorporates all previous allegations.

139.    Under Ohio Rev. Code § 2921.03(A) "[n]o person shall attempt to influence . . . a public servant . . . by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner."

140.    Ohio Rev. Code § 2921.03(C) provides a civil cause of action for violations of § 2921.03(A), and for the recovery of attorney fees and other expenses in bringing the civil claim.

141.    Under Ohio Rev. Code § 2307.60(A)(1), "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action," including attorney fees and punitive damages.

142.    Defendant Griffin, under the supervision of Defendants Small and Cawthorn, and in complicity with other individual Defendants, filed or submitted false writings in a reckless manner in an attempt to influence public servants to prosecute and convict Mr. Margolis and preside over such a travesty. Those writings included the complaints against Mr. Margolis for supposedly enticing a child under 14 years of age into his car with sexual motivation and the probable-cause affidavit—when Defendants *knew* from the alleged victim that this was bogus.

143.    At the time Defendant Griffin's complaint and affidavit were filed in Oberlin Municipal Court, he had learned from a direct interview with the purported victim of the August 24, 2022 incident that nothing sexual had been said or occurred between the boy and Mr. Margolis. Despite this precise knowledge, Defendant Griffin filed a complaint and affidavit attesting Mr. Margolis had acted with sexual motivation.

144.    As a direct and proximate result of Defendant's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant ais liable.

145.    Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 14
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.11—PERJURY, AND R.C. 2923.03—COMPLICITY (AGAINST DEFENDANTS GRIFFIN AND SMALL)

146.    Plaintiff incorporates all previous allegations.

147.    Under Ohio Rev. Code § 2307.60(A)(1), "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action," including attorney fees and punitive damages.

148.    Under Ohio Rev. Code § 2921.11(A), "[n]o person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material."

149.    Defendant Griffin knowingly made false statements under oath or affirmation, including in affidavits in support of complaints, accusing Mr. Margolis of acting with sexual motivation when he knew from the purported victim that Mr. Margolis did not do so.

150.    Defendant Small was complicit, by, among other things, signing off on Defendant Griffin's false statements.

151.    Those false statements were material to the prosecution of Mr. Margolis.

152.    As a direct and proximate result of Defendant's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant ais liable.

153.    Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 15
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.12—TAMPERING WITH EVIDENCE (AGAINST DEFENDANTS GRIFFIN, SMALL, JOHN DOES 1–5)

154.    Plaintiff incorporates all previous allegations.

155.    Ohio Rev. Code § 2921.12 provides that no person, knowing official proceedings are likely to be initiated, shall (1) "[a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation," or (2) "[m]ake, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation."

156.    The named Defendants knew official proceedings were imminent, including the prosecution of Mr. Margolis and likely civil litigation.

157.    The named Defendants knowingly presented false and misleading records to mislead public officials, including by presenting a false complaint to initiate the criminal prosecution.

158.    The named Defendants knowingly altered, destroyed, concealed, or removed video footage and other documentation of their interactions with Mr. Margolis and witness interviews to mislead the court into believing their allegations, corrupt the outcome of the prosecution, and interfere with his ability to collect civil damages for their misconduct.

159.    As a direct and proximate result of these Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

160.    These Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 16
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.13—FALSIFICATION
### (AGAINST DEFENDANT GRIFFIN)

161.    Plaintiff incorporates all previous allegations.

162.    Criminal statute Ohio Rev. Code § 2921.13 prohibits any person from making or swearing to false statements.

163.    Defendant Griffin knowingly made false statements in official proceedings, including his perjured affidavit, with the purpose to incriminate Mr. Margolis, and with a purpose to mislead public officials in the course of their official duties.

164.    As a direct and proximate result of Defendant's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant ais liable.

165.    Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 17
### SPOLIATION
### (AGAINST DEFENDANT CITY OF AMHERST)

166.    Plaintiff incorporate all previous allegations.

167.    Litigation involving Defendants was probable even in the moments and days after Mr. Margolis was arrested, charged, and prosecuted in such a dubious fashion, as reflected by the law director's incorrect claim to the then-unrepresented Mr. Margolis about Amherst's purported immunity from civil liability. Litigation involving Defendants was even more probable when Mr. Margolis's criminal case was dismissed, and Defendant City of Amherst knew this then, too, as reflected by Amherst Mayor Costilow's conversations with Mr. Margolis about potentially settling the case.

168.     Police records relating to Mr. Margolis's arrest and prosection existed at some point.

169.     Yet the City—by and through the very same assistant law director who served as prosecutor in Mr. Margolis's criminal case—claimed in their August 17, 2023 public-records-request response to have no police records relating to Mr. Margolis's arrest and prosecution.

170.      If this is true, this leads to the logical conclusion that Defendant City of Amherst destroyed many records related to Mr. Margolis, including video footage of police witness interviews, as well as police reports, notes, and communications regarding Mr. Margolis's arrest and prosecution.

171.     Their purpose in destroying those records was to disrupt Mr. Margolis's case against them.

172.     The destruction of those records has disrupted and will keep disrupting Mr. Margolis's ability to secure a civil judgment against Defendants.

**CLAIM 18**
**DESTRUCTION OF PUBLIC RECORDS UNDER OHIO REV. CODE § 149.351**
**(AGAINST DEFENDANT CITY OF AMHERST)**

173.     Plaintiff incorporates all previous allegations.

174.     Records may not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of except under a records-retention schedule approved by a records commission, the state auditor, and the Ohio Historical Society.

175.     Through his public-records requests on August 7, 2022, Mr. Margolis sought to access papers, videos, electronic data, and other records regarding his arrest and prosecution.

176.     Defendant City of Amherst failed to produce many records Mr. Margolis requested, as described in above.

177.     That failure was attributable—at least in part—to Defendant City of Amherst's failure to retain the records Mr. Margolis requested.

178.     When Mr. Margolis requested those records, the City's failure to retain those records was not permitted by its records-retention schedule, including, but not limited to, a requirement to retain

"[r]ecord of all items seized by the police department" for six years, incident reports related to felonies and misdemeanors for six years, "records of calls requiring response by an officer" for 10 years, "[l]isting of all charges issued by officer and to whom they were issued" for three years, expunged records for three years, and fingerprints from arrestees for 50 years.

179.    Mr. Margolis is aggrieved by the destruction of the records he requested. The destruction of records limits the evidence available to Mr. Margolis to show precisely what happened between and among him, the boy who wanted to see his sportscar, and Defendants.

180.    Mr. Margolis commences this civil action for injunctive relief to compel compliance with Ohio Rev. Code § 149.351(A), for his reasonable attorney fees incurred, and for the civil forfeiture of $1,000 per violation for the destruction of witness-interview videos and other documents.

### CLAIM 19
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST DEFENDANTS GRIFFIN, SMALL, AND JOHN DOES 1–5)

181.    Plaintiff incorporates the above allegations.

182.    In conducting themselves as they did, the named Defendants intended to cause emotional distress and knew that their conduct would cause severe emotional distress to Mr. Margolis.

183.    The named Defendants engaged in extreme and outrageous conduct by, among other things:

    a.    Charging and causing Mr. Margolis to be charged with a crime when they knew the purported "victim" had told them nothing untoward had taken place; and

    b.    Charging and causing Mr. Margolis to be charged with a non-existent crime that the Supreme Court of Ohio had invalidated as unconstitutional.

184.    The named Defendants' extreme and outrageous conduct continued over weeks as they continued to support the malicious prosecution.

185.    The named Defendants' behavior went beyond all possible bounds of decency and was such that it could be considered intolerable in civilized society.

186.     As a direct and proximate result of their extreme and outrageous conduct, Plaintiff has suffered and will continue to suffer mental anguish of so serious a nature that no reasonable person could be expected to endure it and for which Defendants are liable. Plaintiff is entitled to recover damages for the intentional infliction of emotional distress under Ohio common law, as well as attorney fees and costs, and seeks punitive or exemplary damages based on the named Defendants' ill-willed, malicious, and wanton conduct.

### CLAIM 20
### REPLEVIN
### (AGAINST THE CITY OF AMHERST)

187.     Plaintiff incorporates all previous allegations.

188.     Mr. Margolis owned cash that Defendants seized.

189.     Notwithstanding the termination of criminal proceedings against him by acquittal at trial, the City did not return all the cash to him.

190.     Mr. Margolis has a right to return of his cash, and a declaration that continued impoundment of his property is unlawful.

191.     As a direct and proximate result of Defendant's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant ais liable.

192.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests the following relief from the Court:

A.     Declare that Defendants' acts and conduct constitute violations of federal and state law and the United States Constitution;

B.     Enter judgment in Mr. Margolis's favor on all claims for relief;

C.     Award Mr. Margolis full compensatory damages, economic and non-economic, including, but not limited to, damages for pain and suffering, mental anguish,

emotional distress, humiliation, lost property, and inconvenience that he has suffered and is reasonably certain to suffer in the future;

D.     Award Mr. Margolis punitive damages as appropriate for all intentional and malicious violations of federal and state law and constitutional rights;

E.     Award prejudgment and post-judgment interest at the highest lawful rate;

F.     Award Mr. Margolis his reasonable attorney fees, expert fees, and all other costs and expenses of this suit;

G.     Award all other relief in law or equity to which Mr. Margolis is entitled and that the Court deems equitable, just, or proper.

## JURY DEMAND

Plaintiff Donald Margolis demands a trial by jury on all issues within this Complaint.


Dated: August 24, 2023                                  Respectfully submitted,

                                                       */s/ Subodh Chandra*
                                                       Subodh Chandra (0069233)
                                                       Donald P. Screen (0044070)
                                                       THE CHANDRA LAW FIRM LLC
                                                       The Chandra Law Building
                                                       1265 West 6th Street, Suite 400
                                                       Cleveland, Ohio 44113
                                                       216.578.1700 (p) / 216.578.1800 (f)
                                                       Subodh.Chandra@ChandraLaw.com
                                                       Donald.Screen@ChandraLaw.com

                                                       *Attorneys for Plaintiff Donald Margolis*